UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CENTER FOR BIO-ETHICAL REFORM,
INC., GREGG CUNNINGHAM, DARIUS
HARDWICK, CHRISTIAN ANDZEL,
MATTHEW RAMSEY, and UB STUDENTS
FOR LIFE,

                                    Plaintiffs,                    **DECISION AND ORDER**
     v.                                                         13-CV-581-A

DENNIS R. BLACK, BARBARA J.
RICOTTA, THOMAS TIBERI, and
GERALD W. SCHOENLE, JR.,

                                    Defendants.

_____

      The plaintiffs in this civil rights action under 42 U.S.C. § 1983 are protestors and activists who allege that their fundamental rights to freedom of speech and to equal protection of the laws were violated during demonstrations on the campus of the State University of New York at Buffalo.  Plaintiffs were protesting abortion by exhibiting photo-murals containing large, horrific images equating abortion to historically-recognized genocides.  Plaintiffs allege that the defendants, who are all University officials, allowed counter-demonstrators to use signs, umbrellas, and bed sheets to block the photo-murals from view.  Plaintiffs allege the defendants intentionally allowed counter-demonstrators to impair plaintiffs' exercise of their free speech rights because the defendants were hostile toward both the gruesome content and the anti-abortion viewpoint of the photo-mural exhibit, and because the defendants wanted to retaliate against the plaintiffs because of the plaintiffs' insistence that their freedom of speech not be impaired.

The action is before the Court upon objections of the University defendants to an October 1, 2013 Report and Recommendation of Magistrate Judge Hugh B. Scott that recommends denial of a motion by defendants pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The standard of review of a magistrate judge's report and recommendation is *de novo* for findings and recommendations to which a party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court reviews unobjected-to findings and recommendations for clear error or manifest injustice. *See e.g.*, *Buckley v. Niagara Frontier Transportation Authority*, *et al.*, 2016 WL 7403812 at *1 (W.D.N.Y. Dec. 21, 2016).

Upon review of the Report and Recommendation, the Court finds as a threshold matter that only one of the individual plaintiffs has standing to sue. Accordingly, pursuant to Fed. R. Civ. P. 12(h)(3), the Court dismisses from the action the individual plaintiffs Gregg Cunningham, Darius Hardwick, and Christian Andzel, without prejudice. The Court finds that the remaining plaintiffs, Center for Bio-Ethical Reform, Inc. ("CBR"), UB Students for Life, and Matthew Ramsey ("Ramsey") allege causes of action under 42 U.S.C. § 1983 for violations of their rights to freedom of speech and to equal protection of the laws. Accordingly, for the reasons that follow, the Court follows the recommendation of the Magistrate Judge in the Report and Recommendation as it pertains to these plaintiffs, and the University defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted is denied.

## BACKGROUND

On a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotations and citation omitted). The Court assumes well-pleaded facts are true and draws reasonable inferences that support plausible causes of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' Complaint alleges as follows:

In December of 2012, Christian Andzel ("Andzel"), as President of UB Students for Life, reserved a place on the campus of the State University of New York at Buffalo to display plaintiff CBR's "Genocide Awareness Project," which uses photo-murals with large, horrific images to compare abortion to historically-recognized genocides. Andzel reserved the location, an open space outside a main entrance of a Student Union building where speech activities were routinely allowed to occur, for April 15 and 16, 2013. He complied with University procedures to do so.

In March of 2013, Andzel received an e-mail from the University requesting a meeting about "concerns that need to be addressed." Dkt. No. 1, ¶ 29. Defendant Thomas Tiberi ("Tiberi"), Director of Student Life, and another University employee met with Andzel, and informed him that they did not want UB Students for Life to force people to see plaintiff CBR's disturbing Genocide Awareness photo-murals. They told Andzel that they wanted to move the display to a remote location on the

campus.

A few days later, after plaintiff CBR threatened litigation over any forced change of the location for the Genocide Awareness photo-murals, the University granted final permission for use of the space by the main entrance to the Student Union. Nevertheless, on April 15, 2013, during the first morning of the scheduled two-day photo-mural exhibition, defendant Tiberi requested that CBR reduce the size of the display. An employee of CBR, plaintiff Darius Hardwick, responded by showing defendant Tiberi photos of numerous other student events held near the Student Union that had been permitted, and persuaded the University not to reduce the size of the exhibition.

Later on the first day of the Genocide Awareness photo-mural protest, a number of counter-demonstrators assembled, and some sought to block the gruesome anti-abortion imagery from view. Some counter-demonstrators objected to the horrific content, some objected to the anti-abortion viewpoint the photo-murals expressed. The photo-murals had been cordoned off with waist-high tubular-metal crowd-control barricades, but counter-demonstrators stood close to the portable barricades and tried to block others' views. Plaintiff CBR's employee told two campus police officers that the conduct of the counter-demonstrators was unlawful, and told the police the counter-demonstrators' disruptions would not be tolerated.

The next morning, when plaintiffs' Genocide Awareness protest resumed, four counter-demonstrators gathered near the front of the photo-murals. Plaintiff CBR again complained to campus police, the police spoke to the counter-demonstrators,

and two of the four left.

However, throughout the second day of the exhibition, more counter-demonstrators gradually arrived and proceeded to block CBR's photo-murals from view with signs, umbrellas and bed sheets.  As the counter-demonstration escalated, CBR asked campus police to separate the protestors from the photo-murals to stop the obstruction of the images, but police refused to do so.  A police officer told plaintiff Ramsay at some point that the officer was "under orders not to stop the protestors' disruptive conduct."  Defendant Gerald W. Schoenle, Jr. ("Schoenle"), Chief of Police, State University of New York at Buffalo, confirmed to CBR that no action was to be taken, and refused to follow CBR's specific advice to separate the counter-demonstrators from the photo-murals even though the counter-demonstrators were "intentionally engaging in conduct that was designed to interfere with and disrupt plaintiffs' peaceful speech activity *because* they opposed plaintiffs' message."  Dkt. No. 1, ¶ 48 (emphasis in Complaint).  Defendant Tiberi similarly refused to take steps to stop the counter-demonstrators' disruptive conduct.  Defendants Tiberi and Schoenle were seen conferring during counter-demonstrators' attempts to obscure the photo-murals.[1]

Plaintiffs allege that defendant Tiberi's attempts to move and diminish the size of CBR's Genocide Awareness photo-mural exhibition and the circumstances of defendants' refusals to restrict the place and manner of the counter-demonstration

---

[1] Defendants Tiberi and Schoenle are sued in their individual and official capacities. Defendants Black and Ricotta are sued only in their official capacities and upon allegations of supervisory responsibility.  No damages are sought from Black or Ricotta.

show that the University defendants were motivated to allow counter-demonstrators to disrupt the plaintiffs' protest out of hostility toward the gruesome content and toward the anti-abortion viewpoint of the photo-mural display.[2] Plaintiffs allege the counter-demonstrators' disruption and blocking of the photo-murals on April 16, 2013 that was enabled and allowed by the defendants unconstitutionally burdened plaintiffs' rights to freedom of speech under the First and Fourteenth Amendments. They also allege the University defendants' conduct to impair exhibition of the photo-murals was a form of selective enforcement that deprived plaintiffs of their rights to equal protection of the laws under the Fifth and Fourteenth Amendments. Plaintiffs' allege that they plan further, similar protests, and their claims pursuant to 42 U.S.C. § 1983 seek injunctive, declaratory, and other relief.

## DISCUSSION

The University defendants object to the recommended denial of their Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim primarily by arguing that plaintiffs' Genocide Awareness exhibition was a success for plaintiffs, and that plaintiffs' constitutional rights to free speech or equal protection simply were not

---

[2] Plaintiffs claim both content and viewpoint discrimination and contend that the space near the Student Union where the Genocide Awareness photo-murals were exhibited is a designated public forum. Dkt. No. 1, ¶¶ 26, 50. Gruesome content of images does not deprive the images of First Amendment protection, *see e.g.*, *United States v. Stevens*, 559 U.S. 460 (2010), or permit restriction of the images' content due to others' reactions in a public forum. *See e.g.*, *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 788 (9th Cir. 2008). Viewpoint discrimination is a subset of content discrimination occurring ". . . when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction" that is impermissible even in a limited public forum. *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 828-29 (1995) (citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983)).

violated by the defendants. The specific arguments raise questions whether plaintiffs suffered injuries, questions of the traceability of any such injuries to conduct of the defendants (as opposed to conduct of counter-demonstrators), and questions of redressability, all of which call into question plaintiffs' standing to sue. The Court must address the plaintiffs' standing at the outset, before the Court considers whether the Complaint states causes of action. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

**I. Standing.**

To establish standing, a plaintiff is required to demonstrate: (1) that he has "suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a sufficient "causal connection between the injury and the conduct complained of"; and (3) a "likel[ihood]" that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal quotations and citations omitted). "The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III [of the Constitution]. *Lujan*, 504 U.S. at 560 (citation omitted). Without it, the Court has no power to decide a case. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016); *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132-33 (2011).

The plaintiff must "demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v.*

*Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).  To seek prospective relief, such as injunctive relief or a declaratory judgment, the plaintiff is obliged to "satisfy the requirement that threatened injury must be 'certainly impending.' " *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Lujan*, 504 U.S. at 565, n.2).

A complaint must contain specific allegations that "plausibly suggest [parties have] standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  And because standing is essential to a court's power to entertain suit, courts must refrain from drawing inferences to find standing.  *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).  Instead, a plaintiff's burden to establish standing is "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).  For the reasons that follow, plaintiffs Cunningham, Hardwick, and Andzel lack standing and are therefore dismissed as plaintiffs.[3]

**A. Organizational Standing.**  It is well-settled that an organization "may file suit on its own behalf 'to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.' " *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  When an organization sues on its own behalf, "it must meet the same standing test that applies to individuals by showing actual or threatened

---

[3] Because dismissals for lack of standing are for lack of subject-matter jurisdiction, the dismissals are without prejudice.  *See e.g.*, *Carter v. Healthpoint Technologies*, 822 F.3d 47, 54-55 (2d Cir. 2016).

injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Id.* (quotation and alterations omitted).  By the same token, "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art[icle] III."  *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).  "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy."  *Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 486 (1982).

Plaintiff CBR is incorporated under the laws of California.  CBR alleges that defendant Tiberi's attempts to move its Genocide Awareness exhibition to a remote location on the campus of the University, and then to diminish the size of the protest, followed by the University defendants' refusals to restrict the place and manner of the counter-demonstration on April 16, 2013, tend to show that plaintiffs were the victims of viewpoint discrimination and retaliation for exercising their free speech rights.  Actual impairment of fundamental rights guaranteed by the Constitution is an injury sufficient to confer standing.  *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 486 (1982).

The injury-in-fact requirement of Article III of the Constitution is met in the First Amendment context if "a plaintiff has suffered threatened or actual injury that results from a defendant's alleged illegal act."  *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d Cir.2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  In light of the allegations of the Complaint, CBR's claimed loss of "the

opportunity to express its message in the way it preferred," due to the specific unconstitutional motives of defendants, is an injury-in-fact, traceable to defendants and redressible, plainly sufficient to confer standing upon CBR. *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 650 (2d Cir. 1998).

Plaintiff UB Students for Life is an unincorporated association suing in its common name. Dkt. No. 1, ¶¶ 11-12. It does not allege facts in the Complaint showing whether it purports to sue for an injury or injuries of its own, or purports to sue as a representative of its members. *Id*.; *see United Food and Commercial Workers v. Brown Group,* 517 U.S. 544, 557 (1996). Nevertheless, as stated above, an organization alleges facts sufficient to establish standing to sue on its own behalf if it independently satisfies the requirements of Article III standing—namely, injury-in-fact, a causal connection, and redressability. *See, e.g., N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294–95 (2d Cir. 2012) (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Here, plaintiff UB Students for Life alleges its "mission . . . is to [p]eacefully spread awareness and respect for the dignity of human life from natural conception through natural death." Dkt. No. 1, ¶ 12. Its representative met with defendant Tiberi and was informed the University did not want plaintiffs to force people to see the disturbing photo-murals, and that the exhibition should be moved to a remote location on the campus. In *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011), the Second Circuit held that "only a perceptible impairment of an organization's activities is necessary for there to be an injury in fact." *Id.* at 157 (quotation omitted). Accordingly, and because UB Students for Life

alleges loss of the ability to express its message in the way it preferred due to the content- and viewpoint-hostility of defendants, it has alleged an injury-in-fact, *see Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 650 (2d Cir. 1998), that is traceable to defendants, redressible, and that is therefore sufficient to confer organizational standing.[4]

### B. Individuals' Standing.

Plaintiff Gregg Cunningham is Executive Director of CBR who alleges that he "exercises his right to freedom of speech through the activities and projects of CBR, including the Genocide Awareness Project." Dkt. No. 1, ¶ 7. Plaintiff Cunningham was apparently not present on campus during the photo-mural exhibition and counter-demonstration that are the subject of plaintiff's Complaint. Dkt. No. 1, ¶¶ 45-47. Cunningham did speak to defendant Schoenle on April 16, 2013, at which time he insisted that campus police move counter-demonstrators away from CBR's photo-murals and accused Schoenle of condoning counter-demonstrators' misconduct by permitting it. Dkt. No. 1, ¶ 46.

---

[4] Regardless of whether UB Students for Life intend to invoke organizational standing or associational standing, its legal capacity to do so is "determined by . . . the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). New York law prohibits an unincorporated association from filing suit in its common name. N.Y. Gen. Assoc. Law § 12 (McKinney's 2016). An unincorporated association must sue in New York federal court in the name of its president or treasurer. *Id.*; *see e.g.*, *Arbor Hill Concerned Citizens Neighborhood Assoc. v. City of Albany*, 250 F.Supp.2d 48, 61 (N.D.N.Y.2003). The President of UB Students for Life on April 16, 2013, Matthew Ramsey, is a plaintiff, and he asserts the same legal theories and seeks the same remedies as the unincorporated association. The Court therefore finds the lack of capacity pleading defect in the Complaint need not be cured to establish standing at this stage of the action. *See* Fed. R. Civ. P. 9(a). UB Students for Life shall not proceed on the basis of associational standing unless it amends its Complaint to include specific facts satisfying the three-part test for associational standing in *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

As stated above, an injury-in-fact sufficient to confer standing must be "concrete and particularized," *Lujan*, 504 U.S. at 560, and must impact "the plaintiff in a personal and individual way." *Id.* at n. 1.  Here, given the allegations of the Complaint, and because plaintiff Cunningham was not present at the Genocide Awareness exhibition on the University campus at the time he asserts his free speech and equal protection rights were violated, the Court finds he alleges no tangible and particularized injury.  *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016).  Cunningham's allegation that he speaks "through" CBR, assert claims as a "vehicle for the vindication of value interests" that is not an injury-in-fact conferring standing. *See Sierra Club v. Morton*, 405 U.S. 727, 740  (1972).

Moreover, plaintiff Cunningham alleges no cognizable indirect injury as an officer, director, or as a supporter of CBR's April 16, 2013 Genocide Awareness exhibition.  *See e.g.*, *Costello v. Town of Huntington*, No. 14 Cv.2061(JS) (GRB), 2015 WL 1396448, at *3-5 (E.D.N.Y. Mar. 25,  2015) (citing cases); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F.Supp.2d 568, 582-83  (S.D.N.Y. 2010); *see Keepers, Inc. v. City of Milford*, 807 F.3d 24, 43 (2d Cir. 2015) (corporate plaintiff lacked vicarious standing for alleged First Amendment injuries to its officers and other interested persons).  Because Cunningham also alleges no "certainly impending"  threatened future injury in his individual capacity, *Clapper*, 133 S. Ct. at 1147 (quoting *Lujan*, 504 U.S. at 565, n.2), the Court finds he lacks standing to sue.  *See* Fed. R. Civ. P. 9(a) (pleading capacity is required only if it is necessary to show jurisdiction).

Plaintiff Darius Hardwick also alleges no tangible and particularized injury that he suffered in an individual capacity. With the exception of an allegation that Hardwick too "exercises his right to freedom of speech through the activities and projects of CBR, including the Genocide Awareness Project," Dkt. No. 1, ¶ 8, the specific allegations of the Complaint show Hardwick to be involved during the protest as an employee or "on-site representative" of CBR, or are silent on the capacity in which he was present. Dkt. No. 1, ¶¶ 31, 37, 39-40, 42- 43, 45, and 47. In contrast to plaintiff Cunningham, Hardwick is alleged to have been present at the place and time CBR's exercise of its constitutional rights were allegedly impaired by the University defendants, but the Court is not free to infer that he was present in any capacity other than as a representative of CBR, since there are no clear and specific allegations to the contrary. *Warth v. Seldin*, 422 U.S. 490, 518 (1975); *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *see* Fed. R. Civ. P. 9(a). The Court therefore finds Hardwick lacks standing to sue.

Similarly, no allegations in the Complaint show plaintiff Christian Andzel was involved or participated in events that are alleged in an individual capacity. *See* Dkt. No. 1, ¶ 25 (". . . acting on behalf of [UB] Students for Life . . ."). No allegations place Andzel at the April 16, 2013 protests, and he derives no vicarious individual-capacity standing from his status as President of UB Students for Life. *See* Dkt. No. 1, ¶ 9; *see e.g.*, *Wright–Upshaw v. Nelson*, No. 13–CV–3367 ARR LB, 2014 WL 692870, at *2–4 (E.D.N.Y. Feb.19, 2014) . Andzel alleges no certainly impending threatened future injury and, for all these reasons, the Court finds he also lacks Article III

standing.

Plaintiff Matthew Ramsey was allegedly present at the Genocide Awareness exhibition on the University campus on April 16, 2013, at the time he asserts his free speech and equal protection rights were violated. No allegations in the Complaint suggest he was appearing in other than his capacity as an individual. For the same reasons stated above with respect to the organizational plaintiffs, the Court finds Ramsey alleges a sufficiently tangible and particularized injury to his fundamental rights to express his message in the way that he preferred to give rise to standing to sue. *But see* Fed. R. Civ. P. 9(a).

**II. The Section 1983 Causes of Action.**

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege: (1) the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law. *Id.* "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

**A. The Free Speech Cause of Action.**

"[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago. v. Mosley*, 408 U.S. 92, 95–96 (1972). State actors are "not permitted to privilege the feelings or viewpoints of one group over the viewpoints of another group. *See Forsyth County, Ga. v. Nationalist Movement*, 505

U.S. 123, 134 (1992).  "[U]nder our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers, or simply because bystanders object . . . ."  *Bachellar v. Maryland*, 397 U.S. 564, 567 (1970).  Indeed, "[a]s a Nation, we have chosen . . . to protect even hurtful speech on public issues to ensure that we do not stifle public debate."  *Snyder v. Phelps*, 562 U.S. 443, 460-61 (2011).  It is well settled that "the right to engage in peaceful and orderly political demonstrations is, under appropriate conditions, a fundamental aspect of the 'liberty' protected by the Fourteenth Amendment."  *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 161 (1969) (Harlan, J., concurring).

A plaintiff asserting a § 1983 First Amendment claim must allege facts showing that:

> (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.

*Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985).  First, there is no question plaintiffs' Genocide Awareness protest during which CBR's photo-murals were exhibited on April 16, 2013 was activity protected by the First Amendment.  *See e.g.*, *United States v. Grace*, 461 U.S. 171, 176–177 (1983).  Whether the open space on the University campus by the entrance to the Student Union is properly considered a designated public forum or a limited public forum, the discrimination plaintiffs allege due to both the gruesome content of the Genocide

15

Awareness photo-murals and the anti-abortion message of the photo-murals, or due to plaintiffs' insistence upon exercising their free speech rights, the exhibition was unquestionably subject to First Amendment protection. *See e.g.*, *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 507 (S.D.N.Y. 2013) (discussing attributes of public forums); *Amidon v. Student Ass'n of State Univ. of N.Y. at Albany*, 508 F.3d 94, 103 (2d Cir. 2007) (same).

Second, as the Court finds above in evaluating plaintiffs' injuries for standing purposes, plaintiffs' alleged loss of opportunities to express themselves in the way they preferred when the University defendants allowed counter-demonstrators to use signs, umbrellas, and bed sheets to block the photo-murals from view is sufficient to allege that the defendants took adverse actions against plaintiffs. Plaintiffs make some specific allegations of how defendants acted to burden plaintiffs' speech. Plaintiffs allege that defendants said that they did not want people to have to look at plaintiffs' Genocide Awareness photo-murals. They allege the defendants attempted to change the location of the exhibition to a remote location on campus. Defendants allegedly attempted to cause CBR to diminish the size of the exhibition. And then, despite a threat of disruptive conduct that had occurred a day earlier, defendants refused to restrict the place and manner of a raucous and censorious counter-demonstration which ending up blocking plaintiffs' photo-murals from view. Those circumstantial allegations, if proven at trial, could satisfy the adverse-action element of a First Amendment § 1983 cause of action. *See Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638 (2d Cir. 1998).

Third, to allege the necessary causal connection between the University defendants and the alleged adverse action, plaintiffs are required to allege facts plausibly showing that the protected speech was "at least a 'substantial' or 'motivating' factor" in defendants' alleged discriminatory and retaliatory acts. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir.1993) (citations omitted); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (same). The Court finds the specific allegations of plaintiffs of statements and circumstances tending to show the defendants were hostile to the content and viewpoint of plaintiffs' photo-murals, and plaintiffs' insistence on exercising their rights to freedom of speech, are legally sufficient. Accordingly, defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the free speech claims under 42 U.S.C. § 1983 of plaintiffs CBR, UB Students for Life, and Matthew Ramsey is denied.

**B. The Equal-Protection Cause of Action.**

Plaintiffs' equal protection claim also alleges that the University defendants violated plaintiffs' fundamental rights by unlawfully permitting counter-demonstrators to impair plaintiffs' Genocide Awareness exhibition on April 16, 2013. To allege this selective enforcement cause of action, plaintiffs must plausibly allege: (1) that they were treated differently from other similarly-situated persons, and (2) that the treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (quoting *LaTrieste Rest. & Cabaret v. Vill. of Port Chester*, 40 F.3d 587, 590

(2d Cir. 1994) (internal quotation omitted)).

The Court finds plaintiffs CBR, UB Students for Life, and Matthew Ramsey sufficiently allege that they were selectively treated because their photo-mural exhibition was impaired by the acts of similar counter-demonstrators[5] who were favored as a result of the University defendants' hostile motives to impair plaintiffs' exhibition and to retaliate for plaintiffs' exercise of their rights to free speech. Because this equal protection claim depends upon the alleged violations of plaintiffs' First Amendment rights, the claim "coalesces" with the First Amendment claim. *Gentile v. Nulty*, 769 F.Supp.2d 573, 582–83 (S.D.N.Y. 2011). If plaintiffs succeed on the free speech claim, they will succeed on the equal protection claim. The University defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the remaining plaintiffs' equal protection cause of action is therefore denied.

## CONCLUSION

For the foregoing reasons, the Court finds pursuant to Fed. R. Civ. P. 12(h)(3) that plaintiffs Gregg Cunningham, Darius Hardwick, and Christian Andzel lack standing to sue. Because the Court lacks subject matter jurisdiction over their claims, these plaintiffs are dismissed from the action, without prejudice.

The Court otherwise finds that the motion pursuant to Fed. R. Civ. P. 12(b)(6)

---

[5] To allege a class-of-one equal protection claim, a plaintiff must allege that he was treated differently than someone who was *prima facie* identical in all relevant ways. *See e.g.*, *Prestopnik v. Whelan*, 249 Fed.Appx. 210, 213 (2d Cir. 2007). In addition, the class-of-one plaintiff must allege that "the defendant[s] intentionally treated [him] differently, with no rational basis." *Id.* (citations omitted).

to dismiss the action for failure to state a claim upon which relief can be granted of defendants Dennis R. Black, Barbara J. Ricotta, Thomas Tiberi, and Gerald W. Schoenle, Jr., is denied.  The Court agrees with the recommendation of the Magistrate Judge to deny the motion to dismiss in the Report and Recommendation, Dkt. No. 18, for the reasons that are stated above.

**IT IS SO ORDERED.**

*Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  February 10, 2017